UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLORIA BAHENA DE SOTELO,<br><br>    Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Respondent. | Civil No. 13cv0142 JAH<br>Criminal No. 12cr0061 JAH<br><br>**ORDER DENYING PETITIONER'S MOTION TO VACATE**<br><br>**28 U.S.C. § 2255** |

## INTRODUCTION

Petitioner, Gloria Bahena de Sotelo filed a petition pursuant to 28 U.S.C. § 2255 to vacate her guilty plea to alien smuggling in violation of 8 U.S.C. section 1324. Respondent filed an opposition and Petitioner filed a traverse. After a thorough review of the record and the parties' submissions, and for the reasons set forth below, this Court **DENIES** Petitioner's motion.

## BACKGROUND

On December 7, 2011, Petitioner was arrested and charged with bringing in illegal aliens without presentation in violation of 8 U.S.C. section 1324. Petitioner signed a waiver of indictment and the United States Attorney filed an Information on January 5, 2012. Following her arraignment, Petitioner filed a motion for substitution of attorney and Patrick Aguirre was substituted in as her attorney.

On February 7, 2012, pursuant to a plea agreement, Petitioner pled guilty to the

Information. Thereafter, on Petitioner's motion, the Court relieved Aguirre and substituted in David Shapiro as Petitioner's attorney.

On May 5, 2012, the Court vacated Petitioner's guilty plea. Petitioner pled guilty to the Information pursuant to an amended plea agreement, admitting that she knowingly, and in reckless disregard of the fact that an alien had not received prior official authorization to enter the United States, did bring the alien to the United States. In exchange for Petitioner's guilty plea, the Government agreed not to charge Petitioner with violating 8 U.S.C. section 1324(a)(2)(B)(ii), which carries a three year mandatory minimum and agreed to recommend Petitioner be sentenced to 13 months and a day in custody or the low end of the advisory guideline range. In the amended plea agreement, Petitioner agreed to waive appeal and collateral attack. This Court sentenced Petitioner to six months imprisonment followed by two years of supervised release.

Thereafter, Petitioner filed the instant motion seeking to vacate or set aside her sentence.

**DISCUSSION**

Petitioner moves to vacate her conviction on the ground she was denied effective assistance of counsel. Specifically, Petitioner contends her attorney, Mr. Aguirre, touched her in an inappropriate sexual way making her guilty plea with a different lawyer involuntary. She further contends Mr. Shapiro falsely told her the offense she was pleading guilty to would not make her deportable. She maintains she would have insisted on going to trial had she been properly advised.

**I.   Legal Standard**

A section 2255 motion may be brought to vacate, set aside or correct a federal sentence on the following grounds: (1) the sentence "was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," (3) "the sentence was in excess of the maximum authorized by law," or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a).

//

## II. Analysis

### A. Ineffective Assistance of Counsel

Petitioner argues Mr. Shapiro provided ineffective assistance of counsel when he misadvised her regarding the immigration consequences of her plea. She maintains the crime she pled guilty to, alien smuggling in violation of 8 U.S.C. section 1324(a)(2), is expressly listed as an aggravated felony for purposes of the nation's immigration laws, which is a removable offense. Petitioner contends despite the clear consequences to pleading guilty, Shapiro affirmatively told her that her conviction would not result in removal and his confusion about the immigration laws led him to get the government to remove from the plea agreement a provision that required Petitioner to stipulate to her removal even though the provision was substantively meaningless. She also argues Mr. Aguirre never discussed the immigration consequences of the plea with her and in fact was the one who negotiated the plea agreement that contained the stipulated removal. Petitioner argues Shapiro's representation fell below an objective standard of reasonableness when he allowed Petitioner to plead guilty after he misrepresented to her the immigration consequences of her plea.

Petitioner further argues she would have gone to trial had she been properly advised about the immigration consequences of her guilty plea and had she known going to trial was an option. She maintains her position is supported by the fact that she had a valid duress defense.[1] Petitioner further maintains she has much to lose if deported, namely her husband and four kids, which pales in comparison to the risks of trial and a potential multi-year sentence.

Petitioner argues Aguirre also failed to tell Petitioner her guilty plea would result in

---

[1] Petitioner was convicted of alien smuggling after she was apprehended attempting to go through the San Ysidro Port of Entry with Rogelio Ochoa-Quiroz in her vehicle. She maintains she had been stalked, harassed and raped by Rogelio Ochoa-Quiroz since 2007. She contends, as a result, she suffers from panic disorder, major depression with suicidal ideation and Post Traumatic Stress Disorder and constantly worries about her family members safety. See Petitioner's Exh. 1. She further maintains she agreed to pick up Ochoa from Tijuana, Mexico and drive him to the United States because she feared for her life.

1  her removal. She maintains Shapiro, however, is the relevant attorney because he was able
2  to get the Court to allow Petitioner to re-plead. She argues Shapiro should have
3  immediately moved under Rule 11 of the Federal Rules of Civil Procedure to have
4  Petitioner's guilty plea vacated for two independent fair and just reasons, (1) Aguirre had
5  touched Petitioner in a sexually inappropriate way and (2) Aguirre provided ineffective
6  assistance of counsel by failing to properly advise Petitioner about the immigrations
7  consequences of her guilty plea.

8  In opposition, Respondent argues the record demonstrates Petitioner was informed
9  she would likely be deported as a result of her guilty plea, and entered the plea despite this
10 knowledge. Specifically, Respondent argues Mr. Shapiro's sentencing memorandum and
11 motion for downward departure demonstrate he knew Petitioner's conviction would make
12 her subject to deportation, and his strategy in re-negotiating the plea agreement was to
13 obtain a deportation hearing for Petitioner so she would have the opportunity to argue the
14 equities of her case before an immigration judge. Respondent points to Shapiro's motion
15 for downward departure filed April 25, 2012, in which he explained he negotiated the
16 change in the stipulated removal clause "in hopes that upon termination of her criminal
17 case, [Petitioner's] equities may be taken into consideration in immigration court." Doc.
18 No. 33 at 4. He also referred to Petitioner as an "alien who will most likely be deported"
19 and argued she was subject to extraordinary punishment not contemplated by the
20 guidelines because "[i]t is highly likely that after serving the balance of this instant
21 criminal sentence, she will remain in immigration custody." Id. at 4, 5. Respondent also
22 refers to Shapiro's sentencing memorandum filed April 30, 2012, in which he explained
23 that his goal was to give Petitioner "an opportunity to go before an immigration tribunal
24 and at least have them consider the totality of the circumstances to fight her possible
25 removal and/or deportation." Doc. No. 36 at 4. Respondent argues it is unlikely Mr.
26 Shapiro told the Court one thing and Petitioner another.

27 Respondent contends the plea agreement also makes clear Petitioner's guilty plea
28 makes her deportable. Respondent specifically references the statement in the agreement

1 that "[u]nder federal law, a broad range of crimes are removable offenses, including the
2 offense(s) to which defendant is pleading guilty," and that Petitioner explicitly agreed that
3 she intended to plead guilty even if it resulted in her deportation. Plea Agreement at 10.[2]
4 Respondent maintains Petitioner stated in court, under oath, that she fully understood the
5 terms of the agreement. Additionally, Respondent argues, even if Mr. Shapiro misled
6 Petitioner prior to her pleading guilty and she failed to comprehend the agreement, she
7 found out she was deportable at the plea hearing when the Court thoroughly covered the
8 issue. Respondent maintains Petitioner made no comment expressing alarm or
9 reservations upon being told that her guilty plea subjected her to deportation, indicating
10 she intended to plea guilty regardless of the likelihood of deportation. Therefore,
11 Respondent argues, Petitioner cannot satisfy the prejudice prong because she cannot
12 demonstrate she would have insisted on going to trial if not for Mr. Shapiro's immigration
13 advice.

14 Respondent further argues Petitioner has not demonstrated her guilty plea was the
15 result of coercion, as there is no indication as to how Mr. Aguirre's alleged sexual advances
16 coerced her into pleading guilty. Respondent maintains that even if they did, Petitioner
17 fired Mr. Aguirre and hired Mr. Shapiro. Respondent argues Petitioner's contention that
18 Mr. Aguirre's behavior tainted her guilty plea, rendering it unknowing and involuntary
19 because it caused her to distrust attorneys is inadequate to establish that her guilty plea
20 was the result of coercion by Mr. Aguirre. Respondent contends the Court asked
21 Petitioner if anyone had forced, threatened or intimidated her in any way and she
22 answered no. Respondent argues Mr. Shapiro was not incompetent for not informing the
23 Court of the sexual misconduct allegation. He alerted the Court, in his pleadings and at
24 the plea hearing, to the fact Mr. Aguirre provided ineffective counsel to Petitioner, which
25 resulted in the Court re-taking her guilty plea an conducting a thorough examination of
26 Petitioner to ensure she was pleading knowingly and voluntarily. Respondent argues

---

28 [2]"Defendant nevertheless affirms that she wants to plead guilty regardless of any immigration consequences doces that the plea may entail, even if the consequence is her automatic removal from the United States." Plea Agreement at 10.

Petitioner fails to demonstrate Mr. Shapiro's failure to inform the Court of Petitioner's allegations against Mr. Aguirre fell below the standard of "a reasonably competent attorney" or that she would have not pled guilty and would have insisted on going to trial.

In her traverse, Petitioner agrees Mr. Shapiro informed Petitioner that she risked being deported and whether she would be deported would turn on how an immigration judge viewed her equities. She maintains he did not give her the impression that being deported was a likely outcome. She argues Mr. Shapiro's advice was indisputably inaccurate as she did not just risk being deported, her deportation was a foregone conclusion because alien smuggling is an aggravated felony under 8 U.S.C. section 1101(a)(43)(N), which makes an individual automatically deportable under 8 U.S.C. section 1227(a)(2)(A)(iii). She maintains in that in such a situation, the individual's "equities" and the "totality of [her] circumstances" are irrelevant as no immigration judge will ever take them into consideration. Petitioner argues counsel erroneously failed to tell Petitioner it was a virtual certainty that she would be deported to Mexico and that rendered his performance deficient.

The Sixth Amendment to the Constitution provides that every criminal defendant has the right to effective assistance of counsel. In <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), the Supreme Court articulated the test for determining whether a criminal defendant's counsel rendered constitutionally ineffective assistance. To sustain a claim of ineffective assistance, a petitioner has the burden of showing (1) that his or her defense counsel's performance was deficient, and (2) that the deficient performance prejudiced his or her defense. <u>Id.</u> at 690-92; <u>Hendricks v. Calderon</u>, 70 F.3d 1032, 1036 (9th Cir. 1995). Petitioner must prove both elements. The court may reject his claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. <u>Strickland</u>, 466 U.S. at 697.

The <u>Strickland</u> test applies to federal collateral proceedings. <u>Id.</u> at 697. Furthermore, the Ninth Circuit has applied the <u>Strickland</u> standard to claims of ineffective assistance of counsel during plea negotiations. <u>Washington v. Lampert</u>, 422 F.3d 864,

871-72.

Petitioner fails to demonstrate Shapiro's performance was deficient. To satisfy the deficient performance prong of the <u>Strickland</u> test, a petitioner must show that her counsel's advice was not "within the range of competence demanded of attorneys in criminal cases." <u>Hill v. Lockhart</u>, 474 U.S. 52, 56 (1985). In considering this issue, there is a "strong presumption that counsel's conduct falls within a wide range of acceptable professional assistance." <u>Strickland</u>, 466 U.S. at 689.

To the extent Petitioner argues Shapiro was ineffective for failing to inform the Court of Petitioner's allegations of sexual misconduct by Petitioner's prior counsel, the Court finds Petitioner fails to demonstrate Shapiro's conduct was deficient in light of the fact he was able to have the Court vacate the plea entered with previous counsel. Furthermore, as discussed in further detail below, the evidence indicates Petitioner's guilty plea before this Court when represented by Mr. Shapiro was made knowingly and voluntarily.

Petitioner further maintains Shapiro failed to properly advise her of the immigration consequences of Petitioner's guilty plea. Effective assistance of counsel requires an attorney to inform his client if a guilty plea carries a risk of deportation. See <u>Padilla v. Kentucky</u>, 559 U.S. 356 (2010). Relying on the Ninth Circuit's ruling in <u>United State v. Bonilla</u>, 637 F.3d 980, 984 (9th Cir. 2011), Petitioner argues Shapiro was required to tell her deportation was "virtual certainty." In <u>Bonilla</u>, the defendant was provided no advice about immigration consequences and learned that his plea would likely result in deportation after he pled guilty. <u>Id.</u> The court held that advice about possible immigration consequences of the plea could have at least plausibly motivated a reasonable person in the defendant's position not to have pled guilty and, therefore, the district court's denial of the motion to withdraw the plea constituted an abuse of discretion under the "fair and just reason" standard. <u>Id.</u> Citing <u>Padilla</u>, the Court reasoned that "[a] criminal defendant who faces almost certain deportation is entitled to know more than that it is possible that a guilty plea could lead to removal; he is entitled to know it is a

virtual certainty." Id. at 984.

The record demonstrates Petitioner was informed her guilty plea would most likely result in deportation. Shapiro discusses that Petitioner is likely to be deported in his sentencing documents. Additionally, Petitioner's amended plea agreement explains the crime she is pleading guilty to is a removable offense and she specifically affirms in the agreement that she "pleads guilty regardless of any immigration consequences even automatic removal from the United States." Amended Plea Agreement at 10. Furthermore, this Court informed Petitioner of the possibility of deportation and specifically inquired into whether her attorney discussed the immigration consequences of her plea as presented in the amended plea agreement to which Petitioner responded that he had discussed them with her during a break in the proceedings and before.[3]

---

[3]The Court: Do you understand that there is a possibility that you could be deported or removed from the United States based upon your plea here? Do you understand that?

The Defendant: Yes.

The Court: And that could occur based upon just what you admit to in this Court? Do you understand that?

The Defendant: Yes.

The Court: I look to page 10 of your plea agreement. Paragraph H on page 10 is entitled "Immigration Consequences." You've gone over that provision with your lawyer?

The Defendant: Yes.

The Court: And this is the provision that you principally discussed during the break with your lawyer. Did you discuss this during the break in proceedings with your lawyer when you were sitting over there in the jury box?

The Defendant: And before.

The Court: And before?

The Defendant: Yeah.

The Court: All right. And I understand this has been a provision that's been modified from the original stipulation of removal; is that correct?

The Defendant: Correct.

1  Petitioner was clearly informed about the immigration consequences of her guilty plea in
2  compliance with the holding of Padilla.
3       Accordingly, Petitioner fails to demonstrate ineffective assistance of counsel.

**B. Waiver**

Petitioner waived her right to appeal or collaterally attack her judgment and sentence. See Amended Plea Agreement at 10. A knowing and voluntary waiver of a statutory right is enforceable. United States v. Navarro-Botello, 912 F.2d 318, 321 (9th Cir. 1990). The right to collaterally attack a sentence pursuant to 28 U.S.C. § 2255 is statutory in nature, and a defendant may therefore waive the right to file a section 2255 petition. See United States v. Abarca, 985 F.2d 1012, 1014 (9th Cir. 1993) (holding that, by entering plea agreement whereby defendant waived right to appeal his sentence, defendant relinquished right to directly or collaterally attack his sentence on the ground of newly discovered exculpatory evidence).

The scope of a section 2255 waiver may be subject to potential limitations. For example, a defendant's waiver will not bar an appeal if the trial court did not satisfy certain requirements under Federal Rule of Criminal Procedure 11 to ensure that the waiver was knowingly and voluntarily made. See Navarro-Botello, 912 F.2d at 321. Such a waiver might also be ineffective where the sentence imposed is not in accordance with the negotiated agreement or violates the law. See Id.; United States v. Littlefield, 105 F.3d 527, 528 (9th Cir. 1997). Additionally, a waiver may be "unenforceable" and may not "categorically foreclose" a defendant from bringing section 2255 proceedings where a petitioner claims ineffective assistance of counsel challenging the voluntariness of his plea. Washington v. Lampert, 422 F.3d 864, 871 (9th Cir. 2005); Abarca, 985 F.2d at 1014; see also United States v. Pruitt, 32 F.3d 431, 433 (9th Cir. 1994).

---

The Court:    Okay. But do you understand that the Immigration Service is an independent entity and it determines whether or not you are removed from the United States; not the U.S. Attorney's Office or this Court. Do you understand that?

The Defendant:    Yes

1        Petitioner contends her plea was not made knowingly and voluntarily. Specifically, she contends the actions of her first attorney, Aguirre, rendered her later guilty plea involuntary, especially since the Court was not made aware of Aguirre's action prior to the Rule 11 colloquy. She maintains, only a few months before the guilty plea, Mr. Aguirre made unwanted sexual advances to Petitioner, who already had a fragile state of mind due to another male tormentor. Petitioner further maintains the Court was never informed of what Mr. Aguirre did and, therefore, conducted the colloquy without being able to truly determine whether Petitioner was in a sufficient state of mind to plead guilty. She contends she was not in the proper state of mind and any reasonable person in her position would have struggled to trust an attorney.

        Respondent argues there is ample evidence that Petitioner entered into the waiver knowingly and voluntarily, such as, the waiver is spelled out clearly in Section XI of the plea agreement, two sections of the agreement state explicitly that Petitioner discussed the agreement with her attorney, and fully understood the agreement and the consequences of entering into the agreement. Respondent contends Mr. Shapiro told the Court he discussed the agreement with Petitioner many times on video phone and by telephone, and, in an abundance of caution, Petitioner was allowed time in court to review the agreement personally with Mr. Shapiro prior to signing it at the plea colloquy. Respondent also contends Petitioner acknowledged she had enough time to review the agreement when questioned by the Court and the Court reviewed the terms of the agreement personally with Petitioner, including the waiver, and ensured she understood them. Respondent maintains Petitioner answered in the affirmative when asked by the Court whether she had discussed the waiver with Mr. Shapiro, whether she understood the meaning of collaterally attacking her conviction, and whether she waived her right to do so. Respondent further argues the record contradicts Petitioner's claim that ineffective assistance of counsel led her to enter the plea involuntarily.

        The record demonstrates Petitioner's waiver was made knowingly and voluntarily. Although the Court was not informed of prior counsel's improper conduct towards

Petitioner, there is no indication it affected the voluntariness of Petitioner's plea. The Court specifically asked Petitioner if anyone threatened or intimidated her to get her to enter her plea and she responded no. Additionally, the Court provided time during the hearing to allow Petitioner to go over the details of the amended plea agreement with her attorney, and specifically asked Petitioner whether she had enough time to go over the plea agreement prior to signing .[4] Furthermore, this Court specifically asked Petitioner if she went over the waiver of appeal and collateral attack with her attorney, including explaining the definition of appeal and collateral attack, and Petitioner acknowledged she understood the waiver and she specifically waived appeal and collateral attack on the record during the proceedings. Transcript of Change of Plea and Sentencing Hearing, Respondent's Exh. A at 14 - 16.

Additionally, as discussed above, Petitioner fails to demonstrate her attorney was ineffective. As such, Petitioner fails to demonstrate her guilty plea was not made knowingly and voluntarily, and her waiver is enforceable and forecloses Petitioner's collateral attack.

**C. Hearing**

Petitioner seeks a hearing. Respondent maintains a hearing is not necessary because Petitioner fails to allege facts, which, if true, would entitle her to relief and the files and records of the case show she is entitled to no relief.

---

[4]The Court: Now, prior to signing this document and initialing the pages, have you had enough time to go over the details of this plea agreement with your lawyer?

The Defendant: Yes.

The Court: I'm going to ask again, have you had enough time to go over the details of this plea agreement with your lawyer?

The Defendant: Yes.

The Court: Because if you haven't, we can continue the hearing and I can give you more time to consult with your lawyer. Do you understand?

The Defendant: I understand. It's fine.

Transcript of Change of Plea and Sentencing Hearing, Respondent's Exh. A at 8 - 9.

The record in this matter conclusively establishes Petitioner is not entitled to relief. Accordingly, there is no basis for an evidentiary hearing. See 28 U.S.C. § 2255(b).

### III. Certificate of Appealability

Pursuant to Rule 11 of the Rules following 28 U.S.C. § 2254, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in Section 2255 cases such as this. A habeas petitioner may not appeal the denial of a Section 2255 habeas petition unless he obtains a certificate of appealability from a district or circuit judge. 28 U.S.C. § 2253(c)(1)(A); see also United States v. Asrar, 116 F.3d 1268, 1269-70 (9th Cir. 1997) (holding that district courts retain authority to issue certificates of appealability under AEDPA). A certificate of appealability is authorized "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To meet this threshold showing, a petitioner must show that: (1) the issues are debatable among jurists of reason, (2) that a court could resolve the issues in a different manner, or (3) that the questions are adequate to deserve encouragement to proceed further. Lambright v. Stewart, 220 F.3d 1022, 1025-26 (9th Cir. 2000) (citing Slack v. McDaniel, 529 U.S. 473 (2000); Barefoot v. Estelle, 463 U.S. 880 (1983)).

Based on this Court's review of the record, this Court finds no issues are debatable among jurists of reason and no issues could be resolved in a different manner. This Court further finds that no questions are adequate to deserve encouragement to proceed further. Therefore, Petitioner is not entitled to a certificate of appealability.

## CONCLUSION AND ORDER

Based on the foregoing, IT IS HEREBY ORDERED:

1. Petitioner's motion to vacate, set aside or correct her sentence is **DENIED**; and

//
//
//

2. Petitioner is denied a certificate of appealability.

Dated: March 4, 2014

JOHN A. HOUSTON
United States District Judge